United States District Court
Southern District of Texas

**ENTERED**
July 24, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| NELSON ARIEL UMANZOR CHAVEZ, | § | |
| | § | |
| Petitioner | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:25-CV-252 |
| | § | |
| KRISTI NOEM *et al.*, | § | |
| | § | |
| Respondents. | § | |

## ORDER

Petitioner Nelson Ariel Umanzor Chavez is a native of El Salvador who entered the United States unlawfully. In 2019, an immigration judge ordered Petitioner removed, but granted withholding of removal as to El Salvador based on the Convention Against Torture. It appears that Petitioner was then released into the United States under an Order of Supervision. (*See* Pet., Doc. 1, ¶ 19)

In 2025, Respondents re-detained Petitioner with the intent to remove him to Mexico. Petitioner filed this lawsuit seeking his immediate release and protection from removal to Mexico. The Court denied his request for a preliminary injunction. (*See* Order, Doc. 18)

In January 2026, Respondents removed Petitioner to El Salvador, despite the existing protection from removal to that country. (Mot. to Dismiss, Doc. 23, 2 (acknowledging that the removal was "in error")) Salvadoran authorities immediately took Petitioner into custody.

Respondents now move for dismissal on the grounds that Petitioner's removal renders this action moot. In response, Petitioner contends that the Court can maintain jurisdiction over this matter and order Respondents to facilitate Petitioner's return to the United States and to provide periodic updates regarding those efforts. (Statement, Doc. 21)

For the following reasons, the Court concludes that Petitioner's removal, albeit erroneous, defeats his cause of action in habeas corpus and renders his remaining claims moot as they focus

1 / 9

on relief from removal to Mexico. But the Court also concludes that Petitioner should be afforded the opportunity to amend his pleading to assert causes of action that he believes he may possess based on his wrongful removal to El Salvador.

## I.    Factual Background and Procedural History

### A.  Undisputed Facts

Petitioner entered the United States unlawfully in 2015 as a minor.[1] Although initially detained, immigration officials released him as an unaccompanied minor.

In 2019, with Petitioner apparently now an adult, an immigration judge denied Petitioner's request for asylum and ordered him removed, but granted withholding of removal under the Convention Against Torture as to El Salvador. (Withholding of Removal Order, Doc. 1–2) In making this determination, the immigration judge found that Petitioner was "more likely than not to be tortured in [El Salvador]." 8 C.F.R. § 1208.16(c)(4). Neither Petitioner nor the United States appears to have appealed these decisions, and Petitioner remained at liberty in the country.

About six years later, in May 2025, Respondents detained Petitioner in Baltimore during a check-in with Immigration and Customs Enforcement, and then notified him of their intent to remove him to Mexico. (Pet., Doc. 1, ¶ 20; Notice of Removal, Doc. 1–3)

### B.  Petitioner's Claims

In November 2025, while detained at the Port Isabel Service Processing Center in Cameron County, Texas, Petitioner filed his Petition for Writ of Habeas Corpus (Doc. 1), alleging four causes of action. Through his first, second, and fourth claims for relief, he challenges his removal to Mexico and the process that Respondents intend to follow for such a removal. He bases these claims under the withholding of removal statute (8 U.S.C. § 1231(b)(3)), the Convention Against Torture (8 C.F.R. § 1208.18), the Due Process Clause of the Fifth Amendment,

---

[1] *See Umanzor-Chavez v. Noem*, No. CV SAG-25-01634, 2025 WL 2467640 (D. Md. Aug. 27, 2025). The Court takes judicial notice of the factual background concerning Petitioner, which does not appear to be disputed by the parties.

and *U.S. ex rel Accardi v. Shaughnessy*, 347 U.S. 260 (1954).  In his third claim, he seeks his immediate release in habeas corpus, basing the claim on 28 U.S.C. § 2241. (Pet., Doc. 1; Mot. for TRO, Doc. 2)

On November 7, to maintain the status quo pending resolution of the issues that Petitioner raised, the Court issued a temporary restraining order prohibiting Petitioner's transfer or removal, subsequently extending the protections through December 10. (TRO, Doc. 3; Second TRO, Doc. 5)  Before the temporary restraining order expired, Respondents removed Petitioner to Mexico. (Notice, Doc. 6)  Respondents immediately acknowledged that the removal occurred in error and that they had initiated efforts to return Petitioner to the United States.  The Court issued an Order (Doc. 8) requiring Respondents to "facilitate the return of Petitioner [ ] to the United States[.]"  On November 26, Respondents notified the Court that Petitioner had been returned to the United States and was again in custody at the El Valle Detention Center in Willacy County, Texas. (Order, Doc.  8; Status Report, Doc. 11)

On December 17, the parties attended a hearing on Petitioner's motion for a preliminary injunction.  At the hearing, the Court denied the motion. (*See* December 17, 2025 Minute Entry; *see also* Order, Doc. 18)

### C.  Removal to El Salvador

In January 2026, Respondents removed Petitioner to El Salvador, in violation of the immigration's judge's order granting Petitioner withholding of removal to that country.  In May, Petitioner informed the Court that Salvadoran authorities had immediately imprisoned him upon his arrival in El Salvador. (Statement, Doc. 21)  Salvadoran authorities have transferred Petitioner between prisons and his family has not been provided information regarding his current location, his condition, or whether he is alive. (Melgar Decl., Doc. 21–1, ¶ 7)  Since his erroneous removal, Petitioner has spoken with his wife only once. (*Id*. at ¶ 6)  His family has hired two Salvadoran attorneys to locate Petitioner, but so far to no avail.  The attorneys have communicated to the

family that "it is extremely difficult or nearly impossible to obtain reliable information about detainees transferred from the United States."[2] (*Id.* at ¶ 8)

Within Petitioner's notification informing the Court of his erroneous removal to El Salvador, Petitioner also seeks injunctive relief. (Statement, Doc. 21)  Petitioner clarifies that he "does not at this time seek an order directing Respondents to facilitate his return; he anticipates seeking that relief at a later date, once counsel retained in El Salvador secures Petitioner's release from Salvadoran criminal custody." (*Id.* at 7)  For the time being, Petitioner requests "that the Court retain jurisdiction over this matter and order each party to file a monthly or biweekly status report describing Petitioners' current circumstance of detention in El Salvador, including any efforts that Respondents have undertaken to determine his whereabouts or to facilitate his eventual return." (*Id.* at 9–10)

The Court established a briefing schedule on Petitioner's request for injunctive relief. (Order, Doc. 22)  Respondents contend that Petitioner's removal renders moot his petition for writ of habeas corpus and subsequent request for injunctive relief, because Petitioner is no longer in Respondents' custody. (Motion to Dismiss, Doc. 23)  They also argue that future relief premised upon Petitioner's release from Salvadoran custody is speculative and cannot support continued jurisdiction.  In turn, Petitioner asserts that jurisdiction attached when he filed his habeas petition, and that *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) provides support for Petitioner's requested injunctive relief.

## II.    Analysis

The Petition for Writ of Habeas Corpus (Doc. 1) remains the operative pleading in this matter.  In that filing, Petitioner alleges that he is entitled to release because Respondents possess "no legal basis" to detain him in immigration custody. (Pet., Doc. 1, ¶¶ 31–33)  He also challenges Respondents' intent to remove him to Mexico, basing his claims on 8 U.S.C. § 1231(b)(3), the Due

---

[2] Petitioner's wife received confirmation from an international human rights organization that Petitioner "was being held in detention in El Salvador[.]" (Meglar Decl., Doc. 21–1, ¶ 9)

Process Clause of the Fifth Amendment, and *U.S. ex rel Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The Court will consider the impact of Petitioner's removal to El Salvador on these claims.

### A. Habeas Corpus

#### 1. Jurisdiction

Respondents ask the Court to dismiss the habeas action because "Petitioner is no longer in Respondents' custody and no effective habeas remedy remains[.]" (Mot., Doc. 23, 4) They argue that Petitioner's request for release is premised upon a "speculative" jurisdictional basis, violating the requirement within Article III of the United States Constitution that federal jurisdiction extends only to "cases" or "controversies." U.S. CONST., art. III, § 2, cl. 1. In response, Petitioner contends that the Court retains jurisdiction over the matter because habeas jurisdiction "attached at the moment" when he filed this action, and the adverse collateral consequences of his removal support this Court's continuing jurisdiction. (Mem. in Opposition, Doc. 24, 2)

"It is clear from the common-law history of the writ [of habeas corpus] that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (cleaned up) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). The "core remedy" of habeas is an individual's release from detention, and claims "so far outside the core of habeas may not be pursued through habeas." *Thuraissigiam*, 591 U.S. at 117 (citing *Skinner v. Switzer*, 562 U.S. 521, 535, n. 13 (2011)).

In the immigration context, the deportation of an individual who has filed a habeas action does not automatically render the case moot. Rather, "for a court to exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must demonstrate that he was in custody at the time he filed the petition *and* that his subsequent release has not rendered the petition moot, i.e., that he continues to present a case or controversy under Article III, § 2 of the Constitution." *Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir. 2004) (emphasis in original). A "cognizable

collateral consequence" that stems from an individual's wrongful removal "represents a live case or controversy and [the habeas petition] is not moot." *Id.* at 298. In *Zalawadia*, the parties agreed that the deported-petitioner's removal barred "him from seeking reentry into the United States for a period of five years." *Id.* This "penalty constitute[d] a cognizable collateral consequence" that presented a live case or controversy, even after his removal. *Id.*

In the present case, the parties agree that Petitioner was within Respondents' custody at the time he filed his Petition. And in his pleading, he challenges his detention as being contrary to the "Constitution or laws and treaties of the United States." (Pet., Doc. 1, ¶ 32) This claim falls squarely within the heartland of a habeas action—i.e., seeking relief from allegedly-unlawful detention. As courts determine jurisdiction at the time of the lawsuit's filing, this Court possessed subject matter jurisdiction under Section 2241 over Petitioner's request for release.

Petitioner's subsequent removal did not render the case moot. An alien removed "at the end of proceedings under [8 U.S.C. § 1229a] upon the alien's arrival in the United States and who again seeks admission within 5 years of the date of such removal . . . is inadmissible." 8 U.S.C. § 1182(a)(9)(A)(i). Petitioner's removal to El Salvador triggers the bar that Section 1182(a)(9)(A)(i) imposes. This provision will render him automatically inadmissible should he seek reentry within five years of his recent removal. In *Zalawadia*, the court found this same bar a "cognizable collateral consequence" that preserved a live case or controversy in habeas. The same result holds true as to Petitioner.

In their Motion to Dismiss (Doc. 23), Respondents do not mention *Zalawadia*.[3] They cite another Fifth Circuit decision for the proposition that when a habeas petitioner "is no longer in Respondents' custody and no effective habeas remedy remains, the petition must be dismissed." (Motion, Doc. 23, 4 (citing *Ortez v. Chandler*, 845 F.2d 573 (5th Cir. 1988)). The *Ortez* decision, however, concerned a "legally executed" deportation. *Ortez*, 845 F.2d at 575. That fact contrasts

---

[3] While Petitioner highlights the case in his Response (*see* Doc. 24, 2–3), Respondents submitted no reply. Thus, they remain silent as to the application of *Zalawadia*.

6 / 9

with the present case, in which no party claims that Respondents legally removed Petitioner to El Salvador.  As a result, the Court finds that the principles in *Zalawadia* control.

### 2.  Merits of Habeas Action

Having determined that Petitioner's pleading satisfies the jurisdictional requirements for an action under Section 2241, the Court turns to analyzing the merits of his request for release. And on this point, the Court concludes that Petitioner's action in habeas should be denied.

As an initial matter, Petitioner does not contest that a final order of removal exists permitting his removal from the United States. (*See* Order of the Immigration Judge, Doc. 1-2, 1) While an Immigration Judge granted Petitioner withholding of removal as to El Salvador, that ruling did not nullify the Order of Removal itself. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021) ("[W]ithholding-only relief . . . relates to *where* an alien may be removed [and] says nothing [ ] about the antecedent question *whether* an alien is to be removed from the United States.") (emphasis in original).  And the controlling statutes permit Respondents to detain an alien against whom a final order of removal exists. *See* 8 U.S.C. § 1231(b) ("During the removal period, the [Secretary of Homeland Security] shall detain the alien.").

Turning to Petitioner's claim for release, he provides scant support.  In his cause of action under Section 2241, Petitioner alleges only that "Respondents presently have no legal basis to detain Petitioner in immigration custody[.]" (Pet., Doc. 1, ¶ 33)  But the final Order of Removal wholly undermines this allegation.  Under Section 1231, the Secretary of Homeland Security must detain an individual against whom an Order of Removal has issued.  In his pleading, Petitioner includes no factual allegation calling into question the Order of Removal.  And aside from conclusory statements, he alleges no grounds for the basis of his cause of action under Section 2241.  As a result, the Court concludes that Petitioner fails to present a viable claim in habeas corpus.[4]

---

[4] At times, aliens subject to a final Order of Removal seek release on the premise that the United States cannot remove them to a third country in the reasonably foreseeable future, and that their ongoing detention awaiting such removal

7 / 9

### B. Non-Habeas Claims for Relief

Petitioner alleges that the procedures that Respondents intended to follow to remove him to Mexico violated his rights under 8 U.S.C. § 1231(b)(3), the Due Process Clause of the Fifth Amendment, and *U.S. ex rel Accardi v. Shaughnessy*, 347 U.S. 260 (1954). For example, he alleges a chain refoulment claim, pleading that if Respondents remove him to Mexico, that country in turn will "re-deport him to El Salvador[.]" (Pet., Doc. 1, ¶ 26) He also alleges that before removing him to Mexico, Respondents must provide him with certain procedural protections to comply with the Due Process Clause of the Fifth Amendment.

As Petitioner's non-habeas claims turn on his allegedly-unlawful removal to Mexico, his actual removal to El Salvador renders those claims moot. Barring his return to Respondents' custody, Respondents can no longer remove him to Mexico. As a result, the injury that Petitioner alleges—i.e., removal to Mexico without procedural protections—cannot be "redressed by a favorable decision." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (identifying the elements for Article III's case-or-controversy requirement).

Still, Petitioner may possess a viable cause of action in light of his erroneous removal to El Salvador. In differing contexts, courts have granted relief, or at least recognized a cause of action as viable, when immigration authorities allegedly proceeded with the removal of an alien in an unlawful manner. *See, e.g.*, *Martinez-Andino, v. U.S. Department of Homeland Security, et al.*, No. CV 26-1208 (BAH), 2026 WL 1801137 (D.D.C. June 23, 2026) (granting writ of mandamus to "facilitate" return of alien); *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) (affirming grant of injunctive relief that required the defendants to facilitate the return of the plaintiff alien); *Hernandez Membreno v. Vergara*, No. 1:26-CV-496-RP, 2026 WL 1045952 (W.D. Tex. Apr. 14, 2026) (explaining that the removal of the petitioner defeated habeas jurisdiction, but permitting

---

violates their rights under the Due Process Clause of the Fifth Amendment. In the present matter, however, Petitioner does not allege such a claim and does not reference the governing Supreme Court decision establishing such a claim, *Zadvydas v. Davis*, 533 U.S. 678 (2001).

the alien to separately seek relief under the Federal Tort Claims Act); *Lopez-Flores v. Ibarra*, No. 1:17-CV-00105, 2018 WL 6579180 (S.D. Tex. Jan. 22, 2018) (denying motion to dismiss as to a *Bivens* claim and noting that the plaintiff alien also alleged a claim under the Federal Tort Claims Act).[5]

The Court takes no position on whether Petitioner possesses such a claim or whether any claim would be legally cognizable, but merely recognizes that aliens in situations similar to Petitioner have alleged such causes of action. As a result, the Court will grant leave to Petitioner to amend his pleading to allege such claims, should he wish to do so.

### III.   Conclusion

For these reasons, it is:

**ORDERED** that Petitioner Nelson Ariel Umanzor Chavez's claim based on 28 U.S.C. § 2241 is **DENIED**; and

**ORDERED** that by no later than August 14, 2026, Petitioner Nelson Ariel Umanzor Chavez may file an amended pleading alleging claims based on his removal to El Salvador. Should Petitioner fail to file an amended pleading, the Court will dismiss his non-habeas claims based on the reasons indicated in this Order.

Should Petitioner Nelson Ariel Umanzor Chavez file an amended pleading, it is also:

**ORDERED** that by no later than 21 days after the filing of the amended pleading, Respondents may file an answer, motion, or responsive pleading.

Signed on July 24, 2026.

Fernando Rodriguez, Jr.
United States District Judge

---

[5] The Court notes that Petitioner's removal did not violate any court-issued Order. Had the removal done so, the Court would have inherent power "to enforce obedience to . . . lawful orders, judgments, and processes[,]" *Ex parte Robinson*, 86 U.S. 505, 510–11 (1873), which could include requiring Respondents to facilitate the return of Petitioner to the United States.